**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| |
|---|
| UNITED STATES OF AMERICA, <br><br> **Plaintiff,** <br><br> v. <br><br> [25] JOSÉ OMAR AGUAYO-DELGADO, <br><br> **Defendant.** |

CRIMINAL NO. 24-170-25 (RAM)

<u>OPINION AND ORDER</u>

RAÚL M. ARIAS-MARXUACH, United States District Judge

    Pending before the Court are the Government's *Motion for
Protective Order* and Defendant José Omar Aguayo-Delgado's
("Aguayo-Delgado" or "Defendant") *Motion in Compliance* ("*Motion*").
(Docket Nos. 282 and 302, respectively). Because the matters have
been fully briefed and relate to the same issue, the Court will
address both motions in this Opinion and Order. For the following
reasons, Defendant's *Motion* is **DENIED** and the Government's *Motion
for Protective Order* is **GRANTED.**

**I.    BACKGROUND**

    On May 8, 2024, the grand jury issued an eight-count
*Indictment* against thirty defendants belonging to the "LOS ELITE"
drug trafficking organization ("DTO"), for charges of conspiracy
to possess with intent to distribute controlled substances, in
violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), 846 and 860;
possession and distribution of heroin, in violation of 21 U.S.C.

§§ 841(a)(1) and (b)(1)(A)(i) and 860; possession and distribution of a cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(i) and 860 and 18 U.S.C. § 2; possession and distribution of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(ii) and 860 and 18 U.S.C. § 2; possession and distribution of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(vii) and 860; and possession and distribution of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(vi) and 860. (Docket No. 3 at 1-20). Several defendants were also charged with possession of firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A); and possession of a machinegun in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) and (B)(ii). Id. at 20-21. The narcotics forfeiture includes a sum equal to the total amount of money involved in the conspiracy, to wit: $67,191,390.00, as well as the firearms and ammunition forfeitures. Id. at 22-24.

On September 30, 2024, the Government provided defendants discovery materials in which two transcripts of grand jury testimony were inadvertently disclosed. Upon discovering the error, the Government filed a *Motion for Protective Order* on October 3, 2024, requesting that a protective order be entered as to the grand jury transcripts. (Docket No. 282). Prior to the correction, thirteen attorneys downloaded the discovery from that

date. Id. at 2. Given the violent nature of the organization involved in the case and that the "transcripts contain sensitive information that may endanger the safety of parties to this case and their family members," the Government is concerned of a serious security risk and requests that the Court order:

> the [listed] attorneys to return all copies of the transcripts in their possession or in the possession of any member of their defense team, and that they collect any copies they may have disseminated including any copies . . . provided to their clients, the family members of their clients, or left by them at MDC, and return them to the United States, deleting any electronic copies they may have. . . . [and] order the parties and the attorneys in this case to not disseminate, in any fashion, the transcripts and that the attorneys make no additional copies of the transcripts.

Id. at 2-3.

Twelve of the thirteen attorneys who downloaded the discovery submitted *Motions in Compliance*, stating they had deleted all of the materials as requested by the Government and would comply with the proposed request. (Docket Nos. 284, 289, 291, 298, 300, 305, 307, 309, 312, 313, 315, and 352). However, the attorney for Defendant Aguayo-Delgado requests that the Government's motion be denied in part and that any protective order balance both parties' interests and Defendant's constitutional rights. (Docket No. 302).

In support, Defendant claims that witness testimony in the grand jury transcripts is inconsistent with the Government's proffer and "contradicts in whole or in part the violent

characteristics alleged by the government." Id. at 3-6. Thus, the
inadvertently disclosed evidence is exculpatory or impeachment-
related and should be considered Brady[1] material. Id. Specifically,
Defendant highlights that neither witness mentions any murder
involvement in relation to Defendant and that one witness fails to
mention Defendant at all.[2] Id. at 4.

Furthermore, Defendant asserts that the Government's safety
concerns can be addressed without affecting Defendant's
constitutional right to access exculpatory or impeachment
evidence. Id. at 2. While defense counsel "[has] not and will not
share those transcripts, [it] can't ignore it's content." Id.
Accordingly, Defendant believes that "any Protective Order from
the Court should address the dissemination of grand jury
transcripts to third parties and it's use for non-related matters
to this case." Id. at 6-7.

The Government filed a *Response to Defendant's Motion in
Compliance at DE 302* ("*Response*"), noting that "there is nothing
in either transcript that points to Defendant's innocence" and
Defendant's argument is premised on various assumptions. (Docket
No. 343 at 2-3). According to the Government, Defendant presumes:
(1) one of the witnesses from the disclosed transcripts is the

---

[1] Brady v. Maryland, 373 U.S. 83 (1963).
[2] According to Defendant's *Motion*, the Government proffered "that a
cooperating witness heard [Defendant] talking about murder without specifying
his role or participation" and "that there are four witnesses that connect
[Defendant] to the drug trafficking organization." Id. at 2-3.

individual who spoke about Defendant's involvement in a murder; (2) Defendant received transcripts for all witnesses in the case; (3) the witness who did not identify Defendant during the grand jury testimony did not identify Defendant on another occasion; (4) the witness who did not identify Defendant was shown Defendant's photo during the grand jury testimony; and (5) that the proffers made by the Government are witness statements. Id. at 2. Furthermore, they contend that nowhere in either transcript do the witnesses say Defendant did not belong to the DTO organization, nor did they speak to Defendant never being involved with a murder. Id. at 3.

## II.  APPLICABLE LAW

**Typically**, when the Court is determining whether disclosure of grand jury transcripts is appropriate, it is upon party request and according to the secrecy requirements and disclosure exceptions codified in Fed. R. Crim. P. 6(e). Under Fed. R. Crim. P. 6(e)(3)(E)(ii), a district court may authorize disclosure "at a time, in a manner, and subject to any other conditions that it directs – of a grand jury matter . . . at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." While presented with a notably different scenario in the current case, given the cat has already been let out of the bag, it is worth looking at the standard by which district courts decide

whether the importance of secrecy in grand jury proceedings is outweighed by the particularized need of a defendant to obtain certain information. *See* Douglas Oil Co. v. Petrol Stops Nw., 441 U.S. 211, 219-25 (1979).

"The Supreme Court has repeatedly recognized the importance of secrecy in grand jury proceedings, even after . . . the grand jury has concluded its functions."[3] United States v. Rodriguez-Torres, 570 F.Supp.2d 237, 240 (D.P.R. 2008) (citing Douglas Oil Co., 441 U.S. at 222 and United States v. McMahon, 938 F.2d 1501, 1504 (1st Cir. 1991)). Such "secrecy facilitates the investigation of criminal charges by assuring potential witnesses that their testimony will not become public knowledge, thus encouraging them to testify freely and limiting the potential that they will be improperly influenced by those under investigation." United States v. Pimental, 380 F.3d 575, 591 (1st Cir. 2004); *see* United States

---

[3] There are several reasons the Supreme Court has outlined for grand jury secrecy:

> To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witness who may testify before [the] grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect [an] innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.

Douglas Oil, 414 U.S. at 219 n.10 (internal citations omitted).

v. Sells Eng'g, Inc. 463 U.S. 418, 424 (1983); United States v. Procter & Gamble Co., 356 U.S. 677, 681 (1958).

The court should consider "not only the immediate effects upon a particular grand jury, but also the possible effect upon the functioning of future grand juries." Douglas Oil, 441 U.S. at 222; see Illinois v. Abbott & Assocs., 460 U.S. 557, 566 n.11. (1983) ("Stringent protection of the secrecy of completed grand jury investigations may be necessary to encourage persons to testify fully and freely before future grand juries."). Individuals "would be less likely to testify fully and frankly" without such protections, and "[f]ear of retribution or social stigma may act as powerful deterrents to those who would come forward and aid the grand jury in the performance of its duties." Douglas Oil, 441 U.S. at 219, 222.

Therefore, district courts must **"examine the extent of the need for continuing grand jury secrecy, the need for disclosure, and the extent to which the request was limited to that material directly pertinent to the need for disclosure."** Id. at 223-24. Upon carefully weighing "the competing interests in light of the relevant circumstances," "disclosure is appropriate **only** in those cases where the need for it outweighs the public interest in secrecy," and "the burden of demonstrating this balance rests upon the private party seeking disclosure." Id. at 223.

"A defendant's particularized need must be based on more than mere speculation." _Rodriguez-Torres_, 570 F.Supp.2d at 242. And, since "grand jury proceedings are entitled to a strong presumption of regularity," defendants seeking disclosure bear a "heavy burden of establishing that a particularized and factually based grounds exist to support the proposition that irregularities in grand jury proceedings may create a basis for the dismissal of an indictment." _Id._ Accordingly, "[t]his burden cannot be satisfied with conclusory or speculative allegations of misconduct." _Id._ Rule 6(e) is not a fishing expedition for grand jury wrongdoing without any grounds to believe such abuse has occurred. _Id._

"[T]he typical showing of particularized need arises when a litigant seeks to use 'the grand jury transcript at the trial to impeach a witness, to refresh his recollection, to test his credibility and the like.'" _Douglas Oil_, 441 U.S. at 222 n.12 (quoting _Procter_, 356 U.S. at 683). In this context, use of such materials "is necessary to avoid misleading the trier of fact," when a particular portion of a witness's testimony bears upon some aspect of direct testimony at trial. _Id._ Even so, in "cases of particularized need . . . the secrecy of the proceedings is lifted discretely and limitedly." _Procter_, 356 U.S. at 681. And courts may place protective limitations on the use of any disclosed materials. _Douglas Oil_, 441 U.S. at 223.

### III. ANALYSIS

Defendant argues the production of grand jury transcripts, or in this case already possessed disclosures, is relevant for exculpatory and impeachment purposes – contending the materials contain identifiably exculpatory information in the form of witness testimony he claims contradicts the Government's proffer. In Rodriguez-Torres, defendants similarly contended that they had a right to know certain grand jury evidence under their "right to discover exculpatory evidence"; however, the court was not swayed "to permit the disclosure of grand jury transcripts since the Supreme Court has held that the Government has no duty to present exculpatory evidence to the grand jury." 670 F.Supp.2d at 245-46 (citing United States v. Williams, 504 U.S. 36 (1992)). Furthermore, when defendants similarly argued that disclosure could lead to impeachment evidence, the court found that "[a]lthough the use of grand jury transcripts for impeachment may satisfy the particularized need requirement, the balance struck between secrecy and the need for grand jury transcripts must result in the disclosure of information limited to the claimed need." Id. at 246 (citations omitted). Here, Defendant seeks to retain disclosure of all the transcript materials, which "'is not structured to cover only the material needed' to avoid a possible injustice.'" Id. (quoting Douglas Oil, 441 U.S. at 222).

"In determining whether to break that traditional secrecy, parties seeking disclosure must show 'that the material they seek is needed to avoid a possible injustice in another judicial proceeding.'" McMahon, 938 F.2d at 1504 (quoting Douglas Oil, 441 U.S. at 222). Defendant's assertions regarding the value and content of the two witness transcripts available to him do not demonstrate a need for disclosure that is greater than a need for continued grand jury secrecy. *See* Procter, 356 U.S. at 682 (requiring party seeking disclosure of grand jury transcripts to demonstrate that "without the transcript a defense would be greatly prejudiced or that without reference to it an injustice would be done"). While this is not a completely blind fishing expedition for helpful materials, since the Government already strung up some fish, it is an after-the-fact reasoning attempt to justify keeping the inadvertently disclosed transcripts. As the Government points out, "there is nothing in either transcript that points to Defendant's innocence" and Defendant's argument is premised on various assumptions. (Docket No. 343 at 2-3).

Given the nature of the case, the parties involved, and the early stages of proceedings, the need for continued secrecy is still apparent. The *Indictment* charged thirty defendants with a large-scale drug trafficking conspiracy, involving an assortment of controlled substances and including various counts of firearms and machineguns attributed to several members of the criminal

organization. Furthermore, the inadvertent disclosure did not include all of the evidence or witness testimony relevant to corroborating the Government's proffer as to this specific Defendant, so lack of specific assertions in the disclosed transcripts is not equivalent to an inconsistency with the Government's proffer at this time. Additionally, all of the other attorneys who downloaded the discovery information for which the Government seeks a protective order have complied with the request without issue.

Looking specifically to Defendant's contention of a Brady violation, and having conducted *in camera* review of the disputed discovery materials, the Court fails to see any issue rising to the level of a Brady violation at this time. Brady requires the Government "to disclose evidence in its possession that is favorable to the accused and material to guilt or punishment." United States v. Prochilo, 629 F.3d 264, 268 (1st Cir. 2011) (citing, *inter alia*, Brady, 373 U.S. at 87). "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is **exculpatory** or, because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 281-82 (1999). "Evidence is 'favorable to the accused' if it is either exculpatory or impeaching in nature and 'material' if there is a

reasonable probability that, had it been disclosed, the result of the proceeding would have been different." Prochilo, 629 F.3d at 268. (citations omitted).

Where a claim of Brady error is advanced, "the defendant bears the burden of showing a likelihood of prejudice stemming from the government's nondisclosure." United States v. Simon, 12 F.4th 1, 51 (1st Cir. 2021) (internal quotation marks and citation omitted). The defendant must "'articulate with some specificity what evidence he hopes to find in the requested materials, why he thinks the materials contain this evidence, and, finally, why this evidence would be both favorable to him and material.'" Id. (quoting Prochilo, 629 F.3d at 269). "Suppressed impeachment evidence is immaterial under *Brady*, however, if the evidence is cumulative or impeaches on a collateral issue." Conley v. United States, 415 F.3d 183, 189 (1st Cir. 2005); *see* United States v. Dumas, 207 F.3d 11, 15 (1st Cir. 2000). Furthermore, "suppressed impeachment evidence has little probative value if additional evidence strongly corroborates the witness's testimony the suppressed evidence may have impeached." Conley, 415 F.3d at 189: *see* Smith v. Cain, 565 U.S. 73, 76 (2012) (finding evidence material under Brady when testimony that would have been impeached was the *only* evidence linking the defendant to the crime and the withheld statements directly contradicted the witness's testimony).

To order the Government to turn this document over at this time, or rather, allow Defendant to keep the materials, would improperly expand <u>Brady</u> and eviscerate the Jencks Act in many scenarios. *See* <u>Weatherford v. Bursey</u>, 429 U.S. 545, 559 (1977) ("There is no general constitutional right to discovery in a criminal case, and <u>Brady</u> did not create one."); <u>United States v. Grandmont</u>, 680 F.2d 867, 874 (1st Cir. 1982) ("A court may not compel the disclosure of statements of Government witnesses before the conclusion of their direct testimony."). The First Circuit has not yet resolved the question of disclosure timing for exculpatory witness statements. *See* <u>United States v. Casas</u>, 356 F.3d 104, 116 n.2 (1st Cir. 2004) (noting, without resolving, a "potential conflict between <u>Brady</u> and the Jencks Act"); <u>United States v. Kouri-Perez</u>, 47 F.Supp.2d 166, 173 (D.P.R. 1999) ("The First Circuit has not yet squarely addressed this issue"). *See also* <u>United States v. Tribble</u>, 559 F.Supp.3d 41, 45-46 (D.P.R. 2021) (noting conflict between <u>Brady</u> and Jencks and discussing the sphere of the Jencks Act).

Furthermore, "[j]ust as the government is not entitled to obtain all of the evidence or information that a defendant has compiled in preparation for trial, *Brady* does not entitle a defendant to obtain all of the evidence or information that the government has compiled in the course of its investigation." <u>United States v. Urciuoli</u>, 470 F.Supp.2d 109, 113 (D.R.I. 2007); *see*

Pennsylvania v. Ritchie, 48 U.S. 39, 59 (1987) ("A defendant's right to discover **exculpatory** evidence does not include the unsupervised right to search through the [government's] files"). Brady is not a requirement upon the government to provide verbatim accounts of "everything that may be of interest or even useful to defense counsel[, n]or does Brady require disclosure of every fact that might be viewed as favorable to a defendant, regardless of its significance." Urciuoli, 470 F.Supp.2d at 113; *see* Bagley, 473 U.S. at 675 n.7. Rather, Brady requires the government to disclose materially exculpatory evidence in its possession, meaning "'evidence which, in the eyes of a neutral and objective observer, could alter the outcome of the proceedings.'" Urciuoli, 470 F.Supp.2d at 113 (quoting United States v. Jordan, 316 F.3d 1215, 1252 (11th Cir. 2003)).

The Court is confident that the Government understands the rules concerning timely disclosure of Brady material. Moreover, Defendant's assertions are based entirely upon the content of just two witness transcripts from before the grand jury, which fail to consider other evidence and witnesses the Government presented or intends to present throughout the course of this case. The Government provided other evidence in its seven discovery packages that goes to the crux of the *Indictment*, such as a video recording portraying "an alleged transaction where [Defendant] is present." Additionally, any inculpatory material shall be presented to

Defendant according to the Jencks Act. *See* <u>Tribble</u>, 559 F.Supp.3d at 44; 18 U.S.C. § 3500(b) ("After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement . . . of the witness in the possession of the United States which relates to the subject matter.")

Defendant argues the "testimony contained in the grand jury transcripts contradicts in whole or in part the violent characteristics alleged by the government," but that does not rise to the level of a <u>Brady</u> violation. The fact that neither witness associated Defendant with talk of murder and that one witness did not identify Defendant is not material, exculpatory evidence that goes to the primary counts alleged in the *Indictment* for drug trafficking, it is at most a collateral issue. *See* <u>Conley</u>, 415 F.3d.

## IV.   CONCLUSION

Having reviewed the parties' arguments and the record, the Court hereby **GRANTS** the Government's *Motion for Protective Order* at Docket No. 282 and **DENIES** Defendant's *Motion in Compliance* at Docket No. 302.

**IT IS SO ORDERED.**

In San Juan Puerto Rico, this 27th day of January 2025.

S/ Raúl M. ARIAS-MARXUACH
United States District Judge